```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                          25 CR 412 (MMG)

CHANGLI LUO A/K/A SOPHIA LUO,

                                        Arraignment
                Defendant.
------------------------------x
                                        New York, N.Y.
                                        September 17, 2025
                                        11:30 a.m.

Before:

                HON. MARGARET M. GARNETT,

                                        District Judge

                    APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  BRANDON THOMPSON
     NI QIAN
     Assistant United States Attorneys

STEVEN METCALF II
     Attorney for Defendant


Also Present:
DAVID NAGUIB, Paralegal Specialist (USAO)
```

1                    (In open court; case called)

2             DEPUTY CLERK:  Counsel, please state your appearances
3     for the record starting with the government.

4             MR. THOMPSON:  Good morning, your Honor.

5             Brandon Thompson for the United States.  To my right
6     is Assistant United States Attorney Ni Qian.  And to her right
7     is paralegal specialist David Naguib.

8             MR. METCALF:  On behalf of Sophia Luo, Steven Metcalf.
9     Ms. Luo stands to my right.

10            Good morning again everyone.

11            And good morning, your Honor.

12            THE COURT:  Good morning.  You can both be seated.

13            Good morning to you, Ms. Luo.

14            I just before we begin want to make a record regarding
15    a potential conflict in this matter.  I was an Assistant United
16    States Attorney in the U.S. Attorney's Office for this district
17    from July of 2005 to October of 2017.  I returned to the office
18    in November of 2021 as Deputy United States Attorney, and in
19    that capacity I supervised all criminal and civil cases in the
20    U.S. Attorney's Office.  I remained in that role until May of
21    2023 and then served as special counsel to the U.S. Attorney
22    from May 2023 to December of 2023.  And in that capacity I had
23    supervisory authority over all cases in the criminal division
24    and certain cases in the civil division.

25            Mr. Thompson and Ms. Qian were both AUSAs when I was

Deputy U.S. Attorney, but otherwise I do not know either of them personally, and I don't believe I know you Mr. Metcalf. I have rules specifically regarding my recusal from U.S. Attorney's Office matters on my public website.

Mr. Thompson, have you reviewed those rules and have you reviewed the files at the U.S. Attorney's Office related to this matter?

MR. THOMPSON: Yes, your Honor.

THE COURT: To the best of your knowledge, are you aware of any reason I should recuse from this matter under those rules?

MR. THOMPSON: No, Judge.

THE COURT: Mr. Metcalf, are you familiar with those rules?

MR. METCALF: Not to the extent of Mr. Thompson, but I do have an understanding of those rules, your Honor.

THE COURT: Are you aware of any reason or basis why I should recuse from this matter?

MR. METCALF: Your Honor, at this time I don't see any reason, so I would not take any position. I would leave that to the Court.

THE COURT: Okay. Thank you very much. Based on my own knowledge of the case and the representations of the government, I also do not see any basis for recusal. If at any time that changes, Mr. Metcalf, or new facts come to light or

1  after speaking with your client you think you need to make a
2  motion, you can just send me a letter.
3          MR. METCALF:  I appreciate that, your Honor.
4          THE COURT:  Okay.  Thank you.
5          Ms. Luo, we are here today for purposes of arraigning
6  you on the indictment in this matter, which was returned on
7  September 11 of this year, and charges you with one count of
8  wire fraud, one count of Hobbs Act extortion, one count of
9  blackmail and one count of destruction and concealment of
10 records in a federal investigation.
11         I'm going to ask you to stand now, Ms. Luo, please.
12         Have you seen a copy of the indictment against you?
13         THE DEFENDANT:  Your Honor, not yet.
14         MR. METCALF:  She hasn't read the entire indictment,
15 but I showed her a copy that I have in my email.  She has gone
16 through the complaint, which lays out the details more
17 thoroughly on this case with a magnitude that I haven't seen
18 before.  We have reviewed this countless, countless times, had
19 numerous discussions about them and about the charges that
20 ultimately have resulted in the indictment.
21         So if your Honor wants me to show her the indictment
22 again, I have no problem doing so, but we have gone through the
23 details of this case ad nauseam.
24         THE COURT:  Ms. Luo, I'm just going to ask you, the
25 microphone in front of you, if you can just pull it towards you

1   and straighten it up a little bit. We have a beautiful space,
2   but the acoustics are not very good. So it's most important
3   the court reporter hear you.
4         So you heard everything that Mr. Metcalf said, and is
5   that correct, have you thoroughly discussed this case and
6   charges against you with Mr. Metcalf?
7         THE DEFENDANT: Yes, I did, your Honor.
8         THE COURT: Would you like me to read the indictment
9   out loud to you or will you waive its public reading?
10        THE DEFENDANT: No.
11        THE COURT: No, to which? You don't need me to read
12  it?
13        THE DEFENDANT: Yes.
14        MR. METCALF: That's my understanding, your Honor. We
15  do not need to read it, and we would waive a reading of that at
16  this time.
17        THE COURT: Okay. Is that correct, Ms. Luo?
18        THE DEFENDANT: Yes, correct, your Honor.
19        THE COURT: At this time, how do you wish to plead?
20        THE DEFENDANT: Not guilty.
21        THE COURT: All right. Thank you very much. You can
22  sit down.
23        THE DEFENDANT: Thank you, your Honor.
24        THE COURT: I understand the defendant was arrested in
25  the district on June 14, 2025 on a complaint, was presented in

1  magistrate's court the same day, and granted bail.

2  Is that correct, Mr. Thompson?

3  MR. THOMPSON: Mostly, your Honor. The defendant was
4  actually arrested on a probable cause arrest, and then the
5  complaint was sworn out roughly eleven hours later.

6  THE COURT: But I have the dates correct?

7  MR. THOMPSON: Yes, Judge.

8  THE COURT: And are you seeking any change in
9  Ms. Luo's bail conditions?

10  MR. THOMPSON: No, your Honor.

11  THE COURT: Mr. Thompson, can you just briefly
12  summarize the nature of the case?

13  MR. THOMPSON: Yes, your Honor. This case arises from
14  the defendant's demands for tens, and sometimes hundreds of
15  millions of dollars, based on threats that she made to the
16  victim's businesses, family and reputation. Some of these
17  threats were based on lies and misrepresentations. In
18  particular, the defendant threatened to release compromising
19  and sensitive photos and videos of the victim that did not in
20  fact exist. She also threatened to report the victim to
21  federal authorities for alleged violations of federal law
22  unless the victim paid her millions of dollars.

23  Finally, the defendant attempted to obstruct law
24  enforcement's investigation into her conduct by deleting
25  evidence, as well as concealing evidence.

1          THE COURT:  At this time, Mr. Thompson, does the
2    government expect to file any superseding indictments adding
3    any additional charges or other defendants?
4          MR. THOMPSON:  Your Honor, the government's
5    investigation continues, and it is possible.
6          THE COURT:  I don't want to put you too much on the
7    spot, Mr. Thompson, but does that investigation involve other
8    potential defendants or other victims of this defendant?
9          MR. THOMPSON:  Both, your Honor.
10         THE COURT:  Okay.  As far as the victims you have
11   identified to date, what processes are in place to notify these
12   alleged victims of events in the case and court dates and other
13   requirements pursuant to the Crime Victims Rights Act?
14         MR. THOMPSON:  Your Honor, the victim has been entered
15   into the office's Victim Notification System so the government
16   has complied with that statutory obligation.  That's the
17   primary means to make sure the victim is apprised.
18         THE COURT:  Can you just summarize the nature and
19   status of the discovery.
20         MR. THOMPSON:  Yes, your Honor.
21         The discovery is voluminous.  As your Honor likely
22   read in the complaint, there were search warrants executed for
23   Ms. Luo's person and residence, and there were several
24   electronic devices seized pursuant to those warrants, including
25   five cellphones, two voice recorders, a camcorder, two

1  computers, two cameras, two RAM drives, a portable hard drive,
2  two thumb drives, two SIM cards, one Solid State drive, and two
3  flash drives.  So that is a significant number of devices.
4          In addition, the discovery consists of law enforcement
5  reports and records, documents seized from Ms. Luo's residence,
6  security camera footage, documents and materials produced by
7  telecommunication companies, social media sites and financial
8  and bank statements.
9          With respect to the status of review, our agent
10 partners are in the process of reviewing the devices.  In
11 particular, review has commenced on at least three of the
12 cellphones.  My understanding is the review is substantially
13 completed with respect to the cameras and the voice recorders
14 and the MAC book.  However, there are certain devices which we
15 still cannot access because of password or other issues.  So,
16 in short, the government has commenced a vigorous review of the
17 devices, but it is ongoing and discovery is voluminous.
18         THE COURT:  Okay.  And setting to the side momentarily
19 the devices you haven't yet been able to access.  In terms of
20 devices that have been able to be accessed and the remainder of
21 discovery, do you have a sense of when you might be in a
22 position to begin producing that material?
23         MR. THOMPSON:  The government would propose, your
24 Honor, to commence producing discovery within the next two
25 weeks.  And that if the Court is amenable to a status letter in

1  around two weeks apprising the Court more specifically where
2  things stand with respect to the devices, since that is what
3  comprises the majority of the discovery in this case, that
4  would be our proposal.
5        THE COURT:  And just before I forget, Mr. Thompson,
6  any post arrest statements by Ms. Luo?
7        MR. THOMPSON:  No, your Honor.
8        THE COURT:  Mr. Metcalf, any objection to proceeding
9  in that way with regard to the discovery?
10       MR. METCALF:  With regard to the discovery, that's
11 fine, your Honor.  And I will be in constant communication or I
12 will be in communication with the AUSAs on this matter.  We've
13 had a pretty open line of communication, so I don't anticipate
14 any issues.  And if they need anything from me, such as a hard
15 drive or anything along those lines, I will gladly provide
16 that.  So I am in agreement to proceed as to how the government
17 has laid out to, your honor.
18       THE COURT:  Why don't we do this:  Mr. Thompson, I'm
19 going to direct that you begin producing any discovery that is
20 ready to be produced by October 3 and also send the Court a
21 status letter on that date just apprising me of what is an
22 appropriate schedule for completing discovery based on the
23 progress of gaining access to the many devices and data storage
24 materials that you've described.
25       MR. THOMPSON:  Yes, your Honor.

1     THE COURT:  Of course, if you are able to propose a
2 consent schedule based on your conversations with Mr. Metcalf,
3 that's ideal.  And if the parties have a difference of views,
4 just lay those out in the letter, please.
5     And then why don't we set a status conference for
6 November 7 at 10:30.
7     Does that work for you, Mr. Metcalf, Friday,
8 November 7 at 10:30?
9     MR. METCALF:  Your Honor, that does.  I do want to
10 address one other -- one application of mine with regards to
11 the bail, and I don't know if that would affect that date, but
12 for all intents and purposes, that date works for me, your
13 Honor.
14     THE COURT:  Okay.  We'll get to the bail application
15 in just a moment.
16     MR. METCALF:  Okay.
17     THE COURT:  I know you're traveling from outside the
18 city Mr. Metcalf, would it be more convenient for you to have
19 that conference a little bit later in the morning.
20     MR. METCALF:  Your Honor, I always prefer later in the
21 morning, but my offices are here.  I have property in more than
22 one state, so that -- where I'm traveling from I don't think
23 should impact me proceeding on this case at all.  So I don't --
24 I would like if we could start a little bit later.  That's only
25 if your Honor is available a little bit later in the morning.

1        THE COURT: That's fine. Why don't we say 11:30 on
2  November 7.
3        Mr. Thompson, does that work for the government?
4        MR. THOMPSON: Yes, your Honor. Thank you.
5        THE COURT: 11:30, and at that time I will expect to
6  hear about the status of discovery and set a schedule for any
7  pretrial motions.
8        Mr. Metcalf, what is the bail issue that you wanted to
9  raise?
10        MR. METCALF: So with regards to this indictment and
11  appearing for today's purposes this opened up a line of
12  communication between myself and pretrial, and the
13  conversations have been positive. I've monitored Ms. Luo's
14  conditions and her abiding by them, and ultimately what
15  pretrial's stance was, and I've heard nothing but positive
16  things and based on that, and in light of the conditions that
17  have been set to protect the community, to ensure that she
18  appears, and to also be able to adequately prepare for her
19  defense, just a side note, Ms. Luo's home address is on the
20  same street as my office. It's literally about four blocks
21  away. So I know that we could easily get approvals for that,
22  but my take is that pretrial if they submit a position to the
23  Court that they would have no problem with -- or my
24  understanding is I believe that they would take the position
25  that a curfew should be set instead of or in lieu of home

1     detention for Ms. Luo to be able to ultimately not have to seek
2     approval to go to the grocery store, to do her laundry, to come
3     to my office and things along those lines.
4               She does have a GPS ankle monitor.  I would not ask
5     that that change because that could ensure as well that her
6     movements are being looked at and viewed in real-time, and
7     there have been no issues at all from what I can tell and what
8     I've spoken to pretrial about.
9               So I don't know how your Honor wants to proceed
10    because this is a new position that pretrial has just started
11    discussing with me, and I know that I would want their position
12    as well, but I would make an application for a modification to
13    a curfew and to assure that Ms. Luo ultimately abides by all
14    the conditions set, as she has, the safety of the community,
15    and any individual is not in jeopardy here, and she has gone
16    above and beyond to comply with every single request or
17    condition that has ever even been made by pretrial.
18              So I ask your Honor to take those into consideration,
19    and however your Honor wishes that I proceed, whether it be in
20    writing or however your Honor wishes me to proceed, I just
21    wanted to bring that to the Court's attention and flag it for
22    the Court.
23              THE COURT:  Well, I think I'm going to need a little
24    bit of background.
25              Mr. Thompson, what are Ms. Luo's current bail

1  conditions?

2  MR. THOMPSON:  Your Honor, Ms. Luo is currently on a
3  $500,000 personal recognizance bond signed by one financially
4  responsible person.  It is also secured by an additional
5  $100,000 cash bond.  She has travel restrictions to this
6  district and the Eastern District.  She's surrendered her
7  travel documents, as is standard per usual, and then the
8  standard conditions, your Honor, which include supervision by
9  pretrial services.  She is not allowed to possess a firearm.
10 She has some particularized conditions, including precluding
11 her from using the WeChat application, which the defendant used
12 in furtherance of her crimes.  She can't relocate without the
13 approval of pretrial services.  She cannot contact the victim
14 or any family members.  And she is, of course, not permitted to
15 leave her home.  She is on home detention.

16 THE COURT:  That seems to be the heart of the issue;
17 that she is on home detention.  And have you had an opportunity
18 to discuss with Mr. Metcalf the request specifically as to the
19 home detention, that that be moved to a less restrictive
20 condition?

21 MR. THOMPSON:  We spoke briefly before this
22 conference, your Honor.  The conversation largely consisted of
23 what Mr. Metcalf just presented to the Court, and Mr. Metcalf
24 is correct that pretrial services sent the government and the
25 defense an email inquiring -- asking for our positions on less

1  restrictive conditions. It wasn't clear to me in that email,
2  as Mr. Metcalf I think just relayed, that pretrial laid out its
3  final decision on that point. The government before the
4  conference today relayed that we would oppose such a request if
5  it were made.
6        THE COURT: Okay. And have you had an opportunity,
7  Mr. Thompson, to speak to pretrial services about what their
8  view is?
9        MR. THOMPSON: I have not, Judge. I don't disagree
10 with Mr. Metcalf's representation that from the email it seemed
11 that they would support that. I think he is conveying that
12 accurately, but I have not spoken to the pretrial services
13 officer.
14       THE COURT: So you can be seated, Mr. Thompson. Thank
15 you.
16       Mr. Metcalf, given the government's opposition, I am
17 not going to modify that condition sort of on the fly. I have
18 procedures set out in my individual rules. If you want to make
19 an application to have the bail modified, I need a transcript
20 of what happened before the magistrate judge, a more detailed
21 presentation of what the conditions are and what you're
22 seeking.
23       I certainly encourage you to talk to the government
24 and speak to pretrial because the views of pretrial services as
25 to Ms. Luo's compliance to date are going to be a factor in

1  deciding whether I will grant any less restrictive conditions
2  on her current home detention.
3          So I think whenever you've gathered those materials,
4  Mr. Metcalf, you can just make that application in writing.
5  Just follow the procedures that I have in my individual rules,
6  and I'll give the government an opportunity to respond.  And if
7  we need a conference, we'll all come back in for that, and
8  otherwise I'll rule on the papers.
9          MR. METCALF:  Absolutely.  Understood.  I appreciate
10 it, your Honor.
11         THE COURT:  All right.  So we'll put that to the side
12 for now.
13         Before we go on and just sort of to close the loop on
14 the discovery issue, I just want to remind the government
15 pursuant to Federal Rules of Criminal Procedure 5(f) of the
16 government's obligations under *Brady v. Maryland* and its
17 progeny to disclose to the defense all information, whether
18 admissible at trial or not, that is favorable to the defendant,
19 material either to guilt or to punishment and known to the
20 prosecution.  The government must make good faith efforts to
21 disclose such information to the defense as soon as reasonably
22 possible.  Failure to do so may result in any number of
23 consequences, including a continuance, sanctions, dismissal of
24 the indictment or vacatur of a conviction.
25         I will enter a written order on the docket describing

1  more fully these obligations and the possible consequences of
2  failing to meet them.  And I direct the government to review
3  that order and comply with it.
4           As of today, Mr. Thompson, can you confirm that you
5  understand the government's obligations, and you either have
6  fulfilled or will fulfill them as soon as reasonably possible?
7           MR. THOMPSON:  Yes, your Honor, with respect to those.
8           THE COURT:  Okay.  Thank you.
9           All right.  So we will come back on November 7 if we
10 aren't back together before then to discuss Ms. Luo's bail.  As
11 I said, at that time I will be asking you, Mr. Metcalf, to tell
12 me how much time you need to make any pretrial motions that you
13 might be contemplating.
14          I will also just remind counsel about Local Criminal
15 Rule 16.1 which governs motions addressed to a bill of
16 particulars or any discovery matter.  No such motion will be
17 considered unless it is filed with an affidavit certifying that
18 counsel has conferred with the government in a good faith
19 effort to resolve by agreement, if possible, issues raised by
20 the motion without the intervention of the Court.
21          Mr. Thompson, anything else you'd like to raise before
22 we talk about the speedy trial clock?
23          MR. THOMPSON:  No, your Honor.
24          THE COURT:  Mr. Metcalf, anything else that you'd like
25 to raise?

1        MR. METCALF:  Not at this time, your Honor.

2        THE COURT:  Okay.  Mr. Thompson, do you have an
3   application about the speedy trial?

4        MR. THOMPSON:  Yes, your Honor.  The government moves
5   to exclude time from today until the next conference in this
6   matter on November 7 under 18 U.S.C. 3161.  The exclusion of
7   time would allow the government to produce discovery and allow
8   the parties to continue discussing a potential resolution of
9   this case.

10       THE COURT:  Any objection, Mr. Metcalf?

11       MR. METCALF:  Your Honor, in light of the government
12  labeling discovery as voluminous, at this time we believe the
13  continued efforts of us to try to obtain discovery outweigh any
14  public interest, and we have no objections.

15       THE COURT:  Okay.  Thank you, Mr. Metcalf.

16       I will exclude the time from today until November 7.
17  Ms. Luo was indicted on September 11.  By my calculation, at
18  most six days have elapsed on the speedy trial clock.  I know
19  the government has a view that the time doesn't begin to run
20  until arraignment, but I'm not sure that's correct.  So at
21  most, six days have elapsed.

22       I will exclude the time from today until November 7 of
23  2025.  I find the ends of justice served by excluding such time
24  outweigh the interest of the public and the defendant in a
25  speedy trial because of the voluminous discovery in this case

1  and the difficulty accessing it, reviewing it and producing it
2  to the defendant so that she has adequate time to review it,
3  discuss it with counsel, and determine whether any pretrial
4  motions are appropriate in this case all serve the interest of
5  justice and outweigh the need for speed, and, accordingly, I'll
6  exclude the time until November 7.
7            For now, Mrs. Lieu's bail is continued on the same
8  terms, but I'll await an application from you, Mr. Metcalf,
9  when you're ready to file that
10            MR. METCALF:  Thank you, your Honor.
11            THE COURT:  All right.  Thank you all.  We're
12  adjourned.  I'll see you November 7.
13            (Adjourned)